UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY TUCKER,

            Petitioner,         Case Number 21-11494
                                      Honorable David M. Lawson

v.

RANDEE REWERTS,

            Respondent,
_____/

**<u>OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS</u>**

Michigan prisoner Gregory Tucker was convicted by a jury of burglarizing a business in Ferndale, Michigan. Tucker represented himself at trial with the help of standby counsel. The only evidence that connected him to the crime was a soda bottle left at the scene, which contained trace DNA evidence belonging to him. The bottle unquestionably was placed at the scene during the window of time when the burglary occurred. But there was no other evidence presented in the case that suggested when the trace evidence was deposited on the item or that positively identified the person who left the bottle at the scene that tied Tucker to the crime. The state appellate court held that the evidence was sufficient to support the conviction. However, the prevailing jurisprudence applying Supreme Court precedent — *Jackson v. Virginia*, 443 U.S. 318 (1979), and the cases that follow it — holds that trace evidence found on a moveable object at a crime scene, absent any other circumstantial proof about when the trace was deposited, is not sufficient by itself to establish guilt beyond a reasonable doubt. Because the state court's application of *Jackson* was unreasonable, the Court will grant the petition and issue a writ of habeas corpus.

I.

The facts of the case are simply stated. Talya Ashford rented space on the second floor of a commercial building in Ferndale, Michigan where she operated a beauty and makeup studio. On September 16, 2016, she closed up shop, locked the door, and left for the day at around 4:00 p.m. She returned the next morning at 5:00 a.m. to find that her suite had been broken into, the space ransacked, and much of her inventory stolen. The stolen property, she said, included about $10,000 of beauty supplies, a television, computer, and a clock off the wall. Of significance here, Ashford said that she saw a Coke bottle and cigarette lighter on the counter. She was certain that those items were not in her shop when she left the previous afternoon.

The police responded to her call and took the bottle into evidence. DNA testing suggested traces from two individuals: a "minor donor" and a "major donor." The minor donor could not be identified, but the forensic expert testified that the DNA deposited by the major donor was Tucker to a near 100% certainty.

The responding police officer testified that there were other break-ins at other office suites in the same building around the same time. And the detective who took the bottle into custody said that burglaries at that location were a common occurrence. The detective also said that he examined the scene for fingerprints and was not able to find any.

Based on this evidence, the jury convicted Tucker of breaking and entering with intent to commit larceny. *See* Mich. Comp. Laws § 750.110. He was sentenced as an habitual offender to nine to fifteen years in prison. His conviction and sentence were affirmed on appeal. *People v. Tucker*, No. 343351, 2019 WL 4126755 (Mich. Ct. App. Aug. 29, 2019), *lv. den.* 505 Mich. 1016, 940 N.W.2d 94 (2020) (Mem.). Tucker then filed a petition for a writ of habeas corpus without the assistance of a lawyer under 28 U.S.C. § 2254.

Tucker presents the following grounds in support of his petition:

I. The petitioner was convicted without sufficient evidence to prove beyond a reasonable doubt.

II. The petitioner's rights to due process were violated when the trial court empaneled an anonymous jury without justification.

III. The petitioner was sentenced disproportionately to an upward sentence without reason.

Pet. at 6, 7, 9, ECF 1, PageID.6, 7, 9. The petition also raised an issue of undisclosed evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), but Tucker withdrew that claim because it had not been exhausted in state court. ECF No. 11.

The warden filed a response that tracks the Michigan Court of Appeals opinion holding that the evidence was sufficient because the prosecution is not required to offer evidence that negates all innocent inferences that might flow from circumstantial evidence. *See Tucker*, 2019 WL 4126755, at *1. The warden cites authority for the proposition that "[p]hysical evidence such as fingerprints alone, when found under circumstances that they could only have been made during commission of the crime, are sufficient proof of identity." ECF No. 13, PageID.669 (citing *People v. Himmelein*, 117 Mich. App. 365, 374-75, 442 N.W. 2d 667, 672 (1989)).

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

(quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

Tucker argues that the evidence adduced at trial was not sufficient to prove that he was the perpetrator of the burglary. The Michigan Court of Appeals rejected that argument. It cited the controlling law — *Jackson v. Virginia*, 443 U.S. 318 (1979) — and determined that there was

- 4 -

enough evidence to convict. *Tucker*, 2019 WL 4126755, at *1-2. The court focused on Tucker's argument that the evidence is insufficient if the inferences that can be drawn from circumstantial evidence are equally consistent with guilt and innocence. *Id.* at *2. Tucker had cited a Fifth Circuit case to support that proposition, but the case had been abrogated by a later *en banc* decision. *Ibid.* (citing *United States v. Reveles*, 190 F.3d 678, 686 (5th Cir. 1999), *abrogated by United States v. Vargas-Ocampo*, 747 F.3d 299, 301-02 (5th Cir. 2014) (*en banc*)). The court of appeals then discussed each of the petitioner's alternate theories of innocence, found them wanting, and held that the prosecution in any event was not required to offer evidence to negate them. *Ibid.*

Tucker argues that this decision misapplied federal law established by the Supreme Court.

The governing law is clearly established. It is universally accepted that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). *Jackson* refines that general rule when the sufficiency of the evidence to support a criminal conviction is questioned. Courts must ask "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." 443 U.S. at 318. That rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16. A federal court reviewing a state court conviction under the habeas corpus statute that is "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

Michigan law's articulation of the elements of the breaking and entering crime in this case have not been called into question. But, as with any crime, the prosecution also must prove beyond

a reasonable doubt that the defendant committed the charged offense. *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443, 449 (1976); *People v. Yost*, 278 Mich. App. 341, 356, 749 N.W.2d 753, 767 (2008). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich. 392, 399-400, 614 N.W.2d 78, 81 (2000); *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177, 180 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002).

Did the Michigan courts unreasonably apply *Jackson* to the record facts in this case? "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The term "'unreasonable'" is "a common term in the legal world and, accordingly, federal judges are familiar with its meaning." *Id.* at 410.

State courts, however, are entitled to a generous dose of deference by federal habeas courts. The Supreme Court has explained that that application of the "unreasonable application" rubric depends on the specificity of the specific federal rule. *Yarborough v. Alvarado*, 541 U.S. 652, 663-64 (2004). When the rule announces a general standard, application can involve "a substantial element of judgment." *Ibid.* "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* (citing *Wright v. West*, 505 U.S. 277, 308-09 (Kennedy, J., concurring in judgment).

With respect to the *Jackson* rule, on direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Jackson*, 443 U.S. at 319. On habeas review, that standard must be applied through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *see also Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

The evidence of Tucker's participation in the burglary in this case consists of the Coke bottle found on the premises, which contained trace evidence of his DNA, along with testimony by the store owner that the bottle was not present when the premises were locked up at closing on the evening prior. Viewing that evidence in the light most favorable to the prosecution, it is easy to conclude that the bottle was left in the salon sometime during the thirteen-hour window between the time Talya Ashford closed up shop on September 16, 2016 and when she returned the following morning at 5:00 a.m. Ashford testified that she and her landlord were the sole possessors of the keys to the salon. And she testified with certainty that the bottle was not there when she left the previous afternoon. There were other explanations for how the bottle may have ended up on the counter, and the court of appeals discussed (and rejected) them in its opinion on direct appeal. But that court correctly concluded that the prosecution was not obliged to offer evidence to negate the innocent inferences. *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt."). The conclusion that the bottle was left in the salon by the burglar did not unreasonably apply *Jackson*.

But the presence of Tucker's DNA on the bottle did not lead ineluctably to the conclusion that he was present at the crime scene — i.e., that it was Tucker who left the bottle at the scene. There also was no evidence offered at trial about when his DNA was or could have been deposited on the bottle. And that gap in the proofs is fatal to the state's case.

Generally, the case law applying *Jackson* tracks the rule that trace evidence uniquely corresponding to the defendant may suffice to prove identity where additional circumstantial evidence demonstrates that the trace only could have been left by the defendant at the scene during the commission of the crime in question. *See, e.g., Soto v. Ryan*, 760 F.3d 947, 979-80 (9th Cir. 2014) (holding that evidence of "the placement and location of Petitioner's fingerprints were consistent with them being left during the commission of the crime."); *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (holding that the location of the defendant's fingerprint at the burglary scene — "the fingerprint was obtained from the interior of one of the two lower panes of a louvered window removed during the burglary" — would allow "any jury reasonably [to] have inferred that Schell left his fingerprint on the inside of the screen-protected window during the commission of the burglary"). However, where a trace is located on an "easily movable object," particularly where there is testimony that the trace could have persisted on the object for a lengthy period, or indefinitely, then in the absence of other evidence about when the trace was deposited, proof merely that the object was recovered at the scene does not support a reasonable inference that the trace was deposited during the commission of the crime.

Examples of this application of *Jackson* include *Travillion v. Superintendent Rockview SCI*, 982 F.3d 896 (3d Cir. 2020), involving a habeas challenge to a robbery prosecution. The evidence showed that the robber followed an employee into a store when she arrived in the morning to open up. He was carrying a manilla envelope, which ultimately was found to bear his

fingerprints. There was no other evidence of the perpetrator's identity. The Third Circuit determined that the state courts' finding that the evidence was sufficient unreasonably applied *Jackson*. "Evidence that Travillion's fingerprints were found on the easily movable Manila folder and a paper inside the folder carried into the store by the robber and a witness's description of the robber that does not match Travillion but doesn't necessarily exclude him is not sufficient evidence for a rational trier of fact to place Travillion at the scene of the crime at the time the crime was committed beyond a reasonable doubt." *Id.* at 903-04. The court reasoned, "[i]n addition to the absence of evidence regarding when Travillion's fingerprints on the easily movable folder and paper were impressed, there was a lack of sufficient additional incriminating evidence, circumstantial or otherwise, so as to allow a rational juror to find guilt beyond a reasonable doubt. Although there is evidence that Travillion touched the folder at some indefinite time with his left hand, and there is evidence that the robber carried the folder at the time of the crime in his left hand, there is not sufficiently incriminating evidence that Travillion was the perpetrator holding the folder at the time of the crime." *Id.* at 904-05.

In *United States v. Strayhorn*, 743 F.3d 917 (4th Cir. 2014), the defendant was convicted of Hobbs Act robbery. Two men entered a store and incapacitated the proprietor by binding his legs with zip ties and duct tape. The defendant's fingerprint was found on the duct tape. On direct appeal, the court applied *Jackson* to determine that the evidence of guilt was insufficient to prove the defendant's participation in the robbery, although other evidence supported his conspiracy conviction. The court stated: "It is undisputed that the fingerprint evidence against Janson Strayhorn as to Counts One and Two consists of one partial fingerprint on the duct tape used in the P & S Coins robbery. The duct tape is, without question, an easily movable object. And the government's expert conceded that he had no way to determine when Janson Strayhorn's

- 9 -

fingerprint was imprinted on the tape and that the fingerprint could have been impressed even a year earlier. The probative value of the fingerprint evidence here is thus highly questionable. . . . In sum, a fingerprint on an easily movable object with no evidence of when it was imprinted is sufficient to support a conviction only when it is accompanied by additional incriminating evidence which would allow a rational juror to find guilt beyond a reasonable doubt." *Id.* at 923-24 (cleaned up).

In *United States v. Bonner*, 648 F.3d 209 (4th Cir. 2011), another Hobbs Act robbery case, a fast food store was robbed by two Black males wearing panty hose to obscure their faces. The store employee gave inconclusive descriptions of the robbers, except to say that one of them was wearing a Yankees baseball cap. The police located a Yankees cap in the dumpster behind the store, and DNA testing revealed a match to the defendant. The trial court granted a post-trial motion for judgment of acquittal, and the court of appeals, applying circuit precedent based on the *Jackson* rule, affirmed. The court reasoned, "[s]trikingly, despite claims otherwise, no credible physical evidence indicates that Bonner was wearing the Yankees hat on the night of the robbery. The government disagrees and argues that because Bonner's DNA was 'predominant,' it was reasonable for the jury to infer that he was wearing the hat on the night of the robbery. However, the DNA expert testified that he could not conclude who last wore the hat based on the DNA despite the government's emphasis on the word 'predominant.' Any assumption that Bonner was the last wearer is an impermissible inference by the jury." *Id.* at 214.

And in *Mikes v. Borg*, 947 F.2d 353 (9th Cir. 1991), a pre-AEDPA case, the court of appeals held on habeas review that the evidence of the petitioner's participation in a murder was insufficient to support the conviction. In that case, the proprietor of a fixit shop was found dead in his store. His pockets had been turned out, and he was lying near a disassembled turnstile. The

- 10 -

record revealed that the victim had purchased the turnstile at a going-out-of-business sale at a hardware store. The petitioner's fingerprints were found on one of the chrome posts of the turnstile. There was no other evidence connecting him to the murder scene. To find guilt beyond a reasonable doubt, the court held, "the record must demonstrate that he in fact touched the posts at the time the crime was committed and not at some earlier point." *Id.* at 359. Stating that the petitioner had no obligation to explain "how or when" his fingerprints were deposited on the posts, the court held that "on the basis of the record before us, a reasonable factfinder could not conclude beyond a reasonable doubt that Mikes' fingerprints were placed on the turnstile posts at the time of the commission of the crime." *Ibid.*

These cases illustrate the flaws in the state court's analysis. The Coke bottle certainly was a moveable object. And there is no evidence of when Tucker's DNA was or could have been deposited on the bottle. To the contrary, the DNA expert witness did not even comment on that proposition; she did not indicate how long the trace evidence would persist on the object, and she did not furnish any information from which a rational jury could conclude that the trace evidence was deposited anytime near the break-in. The characteristics of the bottle itself do not support a reasonable inference that the DNA trace evidence must have been deposited during the course of the burglary. Unlike the surfaces in *Soto* and *Schell*, the bottle was not a fixed part of the premises that only could have been touched by a perpetrator who had gained access to the interior. The bottle also had no inherent characteristics that could support a reasonable inference that it must have been touched by the perpetrator during the commission of the crime. For example, it was not a tool like a pry bar that might have been used to gain entry, from which it reasonably could be inferred that the object was handled manually during a breaking and entry, resulting in the deposition of the perpetrator's biological traces. To the contrary, the only evidence in the record

showed that Tucker had contact with the bottle in an unknown place and at an unknown time, and that subsequently the bottle was brought to the store premises by a person or persons unknown. Any inference that the petitioner must have deposited his DNA on the bottle during the course of the burglary was pure speculation unsupported by any positive proof in the record.

Moreover, there was no eyewitness testimony linking the petitioner to the break-in. There was no surveillance videotape of the break-in. The petitioner's fingerprints were not recovered from the store. There was no evidence otherwise linking the petitioner to Ms. Ashford's business. There was no testimony that the petitioner attempted to sell or pawn any items that were stolen during the break-in. No evidence of motive or opportunity on the petitioner's part was presented. Although the evidence established that the petitioner's DNA was recovered from the Coke bottle, there was also evidence that another donor left his or her DNA on the bottle.

Without impermissibly stacking inferences, there is insufficient evidence in this record that Tucker broke into Ms. Ashford's salon. *See Kelly v. Roberts*, 998 F. 2d 802, 808-09 (10th Cir. 1993) (applying *Jackson* to invalidate a conviction for insufficient evidence). "[A]lthough a jury may infer facts from other facts that are established by inference, each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation." *Piaskowski v. Bett*, 256 F. 3d 687, 693 (7th Cir. 2001). In this case, the chain of inferences that the prosecution attempted to forge fails for the reasons discussed above.

And, although the state is not required to rebut possible innocent explanations for the trace evidence, the record does suggest other possibilities. For instance, another person's DNA was recovered from the bottle, suggesting that this person could be the actual perpetrator of the crime. A customer could have left the Coke bottle at the business. The record evidence therefore did not rule out such alternative theories as wholly implausible or improbable. Although Ms. Ashford

testified that the Coke bottle and cigarette lighter found at her business did not belong to her, she admitted that clients or friends and children of clients sometimes brought such items with them into her business. Ms. Ashford was insistent that the Coke bottle had not been in her store prior to the burglary, but the detective in this case testified that burglary victims are often distraught, and he admitted that Ms. Ashford may have been mistaken concerning the timeline of events. Thus, it is also possible that one of Ms. Ashford's clients left the Coke bottle at her business, but in her distress following the break-in she may have not remembered seeing the Coke bottle prior to the break-in. Also, contrary to the Michigan Court of Appeals' finding, there was testimony from a police sergeant that he had been informed by another tenant who was renting another office in the building from Ms. Ashford that the previous tenants could have had keys to the building, establishing the possibility that another person could have broken into Ms. Ashford's business.

None of this, however, is necessary to the conclusion that the positive evidence of the perpetrator's identity in this case falls short of that necessary for proof beyond a reasonable doubt. "Although circumstantial evidence alone can support a conviction, there are times that it amounts to only a reasonable speculation and not to sufficient evidence." *Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008). In this case, the "meager circumstantial evidence" is simply too thin to convict Tucker of this crime, particularly since much of it is "conjecture camouflaged as evidence." *Piaskowski*, 256 F. 3d at 693. Although the evidence may have led to a reasonable speculation that Tucker may have broken into the store, without stacking inferences there is insufficient evidence to prove beyond a reasonable doubt that he was the perpetrator.

Because the state failed to meet its burden of proof, the appropriate remedy is to issue a writ of habeas corpus outright, rather than granting of the writ conditioned on the state retrying the petitioner. *See Brown v. Palmer*, 358 F. Supp. 2d 648, 656 (E.D. Mich. 2005).

III.

It appears that petitioner Tucker is in the state's custody serving a sentence on another conviction. *See People v. Tucker*, No. 340425, 2019 WL 286540 (Mich. Ct. App. Jan. 22, 2019). The decision in this case does not affect the state's authority to confine him on that conviction. However, the evidence in this case is insufficient to support the breaking and entering conviction that is the subject of this petition, and the state courts' determination otherwise was an unreasonable application of *Jackson v. Virginia*.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **GRANTED**.

It is further **ORDERED** that the petitioner's convictions for breaking and entering with intent to commit larceny and being an habitual offender are **VACATED.**

It is further **ORDERED** that the respondent shall release the petitioner from custody on the present conviction.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:  August 1, 2024